IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL FORTUÑO BROWN,

    **Plaintiff,**

        v.

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., *et al.*,

    **Defendants.**

CIVIL NO. 15-1435 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiff Rafael Fortuño Brown ("Fortuño" or "Plaintiff"), filed the instant action alleging that he was wrongfully, and discriminately, denied Long Term Disability ("LTD") benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001.

This matter is before the Court on Eli Lilly and Company ("Eli Lilly"), Lilly del Caribe, Inc. ("Lilly del Caribe"), Lilly Extended Disability Leave Claim Committee ("the Committee"), Lilly Leave and Disability Center, Anthem Life and Disability insurance Company, and Dr. Félix Matos' ("Dr. Matos") Motion to Dismiss (the "motion"). Docket No. 11. Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") also moves to dismiss by joining Eli Lilly's Motion.[1] Docket No. 12. Plaintiff replied to Defendants' Motion. Docket No. 17. Defendants responded to Plaintiff's reply. Docket No. 20. After considering the parties' arguments, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

---

[1] The Court refers to all individual Defendants collectively as "Defendants."

# BACKGROUND

### A. Factual Background[2]

Fortuño began working at Lily del Caribe as an operator on November 27, 1990. Docket No. 22-1 at 3. Following a successful trajectory in his position, Fortuño was promoted in 1991 and 2002 and attained the position of Quality Control technician. *Id.* On December 13, 2002, Fortuño got injured while performing his job. *Id.* He reported his injury to the State Insurance Fund and received continued treatment until 2008. *Id.* In 2003, Fortuño returned to work as a group leader. *Id.* However, his health continued to deteriorate in the meantime. *Id.* In 2007, he received a low full-year performance appraisal despite having received a mid-year satisfactory performance appraisal. *Id.* at 3-4. Because of this evaluation, Fortuño was placed on a mandatory Performance Improvement Plan and demoted to operator. *Id.* at 4. Because of this new position, his health continued to deteriorate. *Id.* Fortuño requested reasonable accommodations, but was never granted one by his employer. *Id.* As a result of his failed requests for accommodation, Fortuño submitted a medical recommendation stating that this new position would be detrimental to his health. *Id.* Despite his deteriorating health, Fortuño kept working as an operator. *Id.* His deteriorating health caused him to go into a depression that required psychiatric hospitalization in 2010. *Id.* at 5. Throughout this ordeal, Lily del Caribe never provided Fortuño with a reasonable accommodation. *Id.*

---

[2] The Court borrows the facts from Plaintiff's Amended Complaint. Docket No. 32. For purposes of Defendants' Motion to Dismiss, all facts in Plaintiffs' Amended Complaint are presumed to be true.

In 2011 he was given a poor evaluation and placed on probation. *Id*. In March of that same year, Fortuño had to take sick leave. *Id*. Days after he went on sick leave, Fortuño was granted benefits under "SINOT," or local short term disability program. *Id*. Despite being on sick leave, Fortuño's health continued to deteriorate. *Id*. On July 2011, Fortuño applied for LTD benefits under his plan. *Id*. at 6. Along with his application, Fortuño submitted a report from his neurologist stating that he could not return to work. *Id*. Three months later, Dr. Matos, Lilly de Caribe's in-house medical doctor, did not concur with Fortuño's neurologist's conclusions. *Id*. On November 2011, Dr. Matos recommended denial of Fortuño's LTD benefits. *Id*. Four months later, Fortuño got notice that his LTD benefits claim was denied. Fortuño appealed this decision but ultimately the appeal was denied on December 2012. *Id*. In March 2014, Fortuño was terminated from his employment at Lilly del Caribe. *Id*. at 7.

B. **Procedural Background**

The EEOC delivered a right to sue letter for allegations that gave rise to this case, on January 2014. *Id*. at 7. Three months later, Fortuño filed a Complaint at Puerto Rico's Department of Labor. *Id*. On April 20, 2015, Fortuño filed the instant complaint alleging wrongful denial of LTD benefits under his previous employer's plan. Docket No. 1.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955,

Civil No. 15-1435 (JAG)  4

1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

I. **Insufficient Process or Insufficient Service of Process**

Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) allow a party to assert a defense of insufficient process or insufficient service of process. These defenses may be waived if not timely asserted. *Williams v. Jones*, 11 F.3d 247, 251 (1st Cir. 1993) (citing *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996 (1st Cir. 1983). "A party filing a motion under Rule 12(b)(4) or Rule 12(b)(5) is essentially contesting the manner in which process or service of process was performed. Therefore, the Court refers to the rules governing service of process." *Boateng v. Inter–American Univ. of P.R.*, 188 F.R.D. 26, 27 (D.P.R. 1999).

Federal Rule of Civil Procedure 4(m) states "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Rule 4(m) further states ". . . if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. Rule 4(m).[3] "It is appellant's burden to demonstrate the requisite cause." *De–La–Cruz–Arroyo v. Commissioner of Social Sec.*, No. 97–2378, 1998 WL 1285621 (1st Cir. 1998) (citing *United States v. Ayer*, 857 F.2d 881, 884–85 (1st Cir. 1988). Although the deadline in the rule always controls, one example of good cause for failing to serve the summons on Defendants is when plaintiffs rely on the service deadline given by CM/ECF, the district court's online docketing system. *Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*, No. CIV. 15-1167 JAG/SCC, 2015 WL 5719801, at *2 (D.P.R. Sept. 29, 2015).

In this case, Plaintiff filed the instant complaint on April 20, 2015. Docket No. 1. Plaintiff then served the complaint on Defendants on August 21, 2015. Docket No. 6. Thus, Plaintiff served the summons to Defendants more than 120 days after the complaint was filed. *Id*. Taking Rule 4(m) literally a court might be inclined to dismiss this suit for insufficient service of process. However, district courts are not required to dismiss a case when service is not made within the 120 day deadline, especially when plaintiffs show good cause for their failure to comply with Rule 4(m). *See* Fed. R. Civ. P. Rule 4(m) ("But if the plaintiff shows good cause for

---

[3] Rule 4(m) has been subsequently amended to give plaintiffs ninety (90) days instead of 120 to serve defendants after filing the Complaint. *See* Fed. R. Civ. P. 4(m) (as amended April 29, 2015. eff. December 1, 2015).

the failure, the court must extend the time for service for an appropriate period."). Plaintiff here relied on the CM/ECF auto-generated deadline of August 21, 2015. Docket No. 1. Also no prejudice is shown to Defendants as they were duly, albeit late, served on that date.[4] Docket No. 6.[5]

Accordingly, the Court finds that the delayed notice to Defendants was excused because Plaintiff reasonably relied on the CM/ECF deadline.[6]

## II. Employment Retirement Income Security Act, 29 U.S.C. § 1001

Congress' purpose in enacting ERISA was to safeguard employee interests by reducing the threat of abuse or mismanagement of funds in employee benefit plans. *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). When evaluating if a plan falls under ERISA, courts have looked to "the nature and extent of an employer's benefit obligations." *Id.* (quotations omitted). Here, however, the parties admit the existence of an ERISA plan and thus, the Court assumes there is one.

Plaintiff seeks declaratory relief and requests Defendants to pay him the benefits he is allegedly entitled to under his plan. Docket No. 1. Plaintiff also seeks $500,000 in money

---

[4] The Court warns litigants that this rule is applied in an ad hoc basis and that attorneys should always do their own calculations to determine when procedurals deadlines lay; otherwise, not adhering to these procedural rules might cause a case to be dismissed.

[5] Courts in their discretion can grant extensions on the 120-day deadline even in the absence of good cause. *Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011); *see also Henderson v. United States*, 517 U.S. 654, 662 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'") (quoting Advisory Committee's Notes on Fed . R. Civ. P. Rule 4(m)).

[6] Plaintiff seeks voluntary dismissal of claims against Eli Lily and Company *without prejudice* under Fed. R. Civ. P. 41(a)(1). Docket No. 17. Accordingly, the Court DISMISSES all claims against Eli Lily and Company without prejudice rendering Defendants' Motion to Dismiss the claims against co-defendant Eli Lily and Company MOOT.

damages and a jury trial. Docket No. 1. In turn Defendants claim that the "claim for benefits" allegation under ERISA Section 502(a)(1)(B) should be dismissed as Plaintiffs have included improper Defendants when pleading the claim. Docket No. 11. Defendants also seek to dismiss Plaintiff's "breach of fiduciary duties" and "discriminatory denial of benefits" claims for not stating enough facts to entitle him to relief. *Id*. Finally, Defendants claim that Plaintiff is not entitled to get money damages or a jury trial in this ERISA claim.

The Court will address each argument in turn.

### A. Proper Defendants Under Section 502(a)(1)(B)

Defendants argue that the claims against Sedgwick and Dr. Matos should be dismissed as they are not proper Defendants in this suit. Docket No. 11. The Court disagrees.

Section 502(a)(1)(B) includes a cause of action for plan participants, and other beneficiaries, "to recover benefits due to him [or her] under the terms of his [or her] plan. 29 U.S.C. § 1132(a)(1)(B). Under ERISA, "[e]very employee benefit plan . . . [must] provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a). The plan is not the only entity that can be sued to enforce Section 502(a)(1)(B); rather, "'[a] proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.'" *Terry v. Bayer Corp*., 145 F.3d 28, 36 (1st Cir. 1998) (quoting *Garren v. John Hancock Mut. Life Ins. Co*., 114 F.3d 186, 187 (11th Cir. 1997)).

Plaintiff contends that Sedgwick is the "plan administrator as it was the one communicating with Plaintiff regarding his disability benefits. Docket No. 1 at 6 (referring to a letter found at Docket No. 17-1). Defendants maintain that although Sedgwick might be

communicating on behalf of the Committee, it did not have enough control over the plan to make it liable under Section 502(a)(1)(B). Docket No. 20 at 3. Taking the allegations in the complaint as true, Plaintiff has shown that Sedgwick had sufficient control over plan decisions making him a fiduciary under ERISA. First, Plaintiff alleges that Sedgwick administrates the plan and makes decisions for it; namely: that Sedgwick communicates on behalf of the plan, handles the plan's claims, and handles the plan's appeals. Docket No. 1 at 6; Docket No. 17 at 3-4. Second, Sedgwick's letter head states that it administers the Lily Leave and Disability Center plan. Docket No. 17-1. Thus, based on the facts provided by Plaintiff, Sedgwick is a proper defendant.[7]

     Likewise, the complaint states that Dr. Matos has shown characteristics of someone who has control over the plan decisions. Docket No. 1 at 6. Dr. Matos was, at the time of the alleged events, employed as an internal doctor by Lily del Caribe, Inc. *Id.* at 3. The complaint also shows that in 2011 Dr. Matos recommended denial of Plaintiff's LTD benefits. *Id.* Dr. Matos' recommendation was not merely administrative but evidenced control over the Committee's decisions. On this basis, and taking all well pleaded facts in the complaint as true, Dr. Matos has discretionary authority over plan decisions, and as such is a proper defendant subject to suit under Section 502(a)(1)(B). *See Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir. 1988) (finding that an officer of a corporation was a proper defendant in an action for benefits since he had

---

[7] The fact that Sedgwick is a third party administrator and not the employer does not change the analysis. *See* 29 C.F.R. § 2509.75-8 (D-2); *see also Terry*, 145 F.3d at 36 (third parties can be subject to suit if they exercise enough control over the plan to make them fiduciaries to plan participants under ERISA).

discretionary authority or discretionary responsibility to administer the plan). In view of the above, the Court finds that Sedgwick and Dr. Matos are proper defendants in this suit.

Accordingly, Plaintiff's 502(a)(1)(B) claim survives Defendants' motion.

C. Breach of Fiduciary Duty under Section 502(a)(3)

Defendants also argue that Plaintiff did not plead sufficient facts that would entitle him to remedies for breach of fiduciary duties. Docket No. 11 at 8. Specifically, Defendants argue that breach of fiduciary duty claims are intended to remedy the plan as a whole and not individual benefit rights. *Id*. In the alternative, Defendants' argue that equitable relief under Section 503(a)(3) is inappropriate as Plaintiff can seek redress in other ERISA provisions namely Section 502(a)(1)(B). *Id*. The Court agrees.

The First Circuit has recognized that ERISA authorizes individual lawsuits for breach of fiduciary duty under Section 502(a)(3). *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 58 (1st Cir. 2001) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 507-15 (1996)).[8] Thus, it is

---

[8] Two sections in ERISA designate who a fiduciary is. Section 1002(21) provides:

> (A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002 (2008). ERISA also has a collateral definition of what is a fiduciary:

clear that Plaintiff need not bring his claim on behalf of the plan, but can bring it as an individual claim for his benefit.

However, the Supreme Court in *Howe*, added a caveat to this rule. *Howe*, 516 U.S. at 515. "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id*. Thus, the Supreme Court "limited the applicability of an individual claim for breach of fiduciary duty to those participants who are unable to avail themselves of other remedies." *Mauser*, 239 F.3d at 58. Here, aside from his extracontractual claims, Plaintiff is essentially asking that the plan honor its commitment and provide LTD benefits to him. Docket No. 32. To that end, Plaintiff has adequately pled a claim "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under Section 502(a)(1)(B). Thus, Plaintiff has other means to recover, and adding another duplicative remedy would be improper. *Mauser*, 239 F.3d at 58 (stating that according to the Supreme Court, courts "should avoid creating duplicative remedies for violations of ERISA's provisions").

---

> (1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.
>
> (2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a) (2008).

Accordingly, Plaintiff's claim for breach of fiduciary duty under Section 502(a)(3) is DISMISSED.

### D. Section 510 Discriminatory Denial of Benefits

Plaintiff also seeks to recover for the discriminatory denial of benefits under Section 510. Docket No. 1 at 8. Section 510 provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.[9] Here, Plaintiff alleges enough facts to state a claim plausible on its face. Plaintiff alleges that Defendants specifically contracted with outside physicians to justify the denial of benefits when Dr. Matos had confirmed his disability and knew that Plaintiff was unable to carry out his duties. Docket No. 1 at 8. Also, in Plaintiff's amended complaint he makes reference to another employee who was granted benefits under the Lilly Extended Disability Plan with less serious health conditions than the ones Plaintiff is alleging to have. Docket No. 22-1 at 8-9; Docket No. 17-1. Thus, it can be inferred form the facts included in the amended complaint that Defendants were trying to prevent Plaintiff from attaining his vested right to

---

[9] It is true that Congress enacted ERISA's Section 510 prohibiting interference with protected rights under an employee benefit plan primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). However, in light of the clear statutory language, Section 510 applies to "any person" and not just to employers. 29 U.S.C. § 1140 (stating that Section 510 applies to "any person"). Thus, Plaintiff can bring a suit against Defendants for violating Section 510.

LTD benefits. Consequently, taking Plaintiff's specific allegations with the allegations elsewhere in the complaint, and amended complaint, the Court finds that Plaintiff's discriminatory denial of benefits claim survives.

Accordingly, Plaintiff's Section 510 claim survives Defendant's motion.

E. **Extra-contractual Damages**

Plaintiff argues he is entitled to $500,000 in damages because of Defendants' breach of contract, breach of fiduciary duties, and mental anguish caused by Defendants. Docket No. 1 at 10. Under ERISA law, however, "extracontractual damages," or damages that are not equitable in nature, are not allowed. *See Evans v. Akers*, 534 F.3d 65, 73 (1st Cir. 2008) (explaining that it is not that monetary relief is excluded, but that it must be monetary relief that the plan participants are entitled to); *see also LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (explaining the difference between damages and equitable relief in the context of an ERISA suit). Here, breach of contract and mental anguish are claims that either would be preempted under ERISA or seek to award extracontractual damages.[10] Thus, these claims are improper to the extent that they add to the benefits that are allegedly owed to Plaintiff.[11]

---

[10] Breach of fiduciary duty is not included in the Court's analysis. A breach of fiduciary duty claim is allowed under Section 502(a)(2). Unfortunately for Plaintiff, a claim under 502(a)(2), as compared to a 502(a)(3), can only be brought on behalf of a plan and not to enforce the rights of an individual beneficiary. *See Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 142 (1985).

[11] Some of Plaintiff's claims regarding the $500,000 can be assumed to be brought under state law (i.e. breach of contract). It is well settled law that ERISA preempts state law in certain areas, one of which are suits regarding the disbursement of benefits owed under a welfare plan. *Wickman v. Nw. Nat. Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir. 1990). Thus, state law claims are preempted and cannot be used to collect from Defendants.

Accordingly, the $500,000 request for damages is DISMISSED.[12]

**F. Jury Trial**

Defendants argue that since ERISA claims are equitable in nature, then a jury trial would be improper. Docket No. 11 at 13-14. The Court agrees.

Although there is nothing in the statute to characterize civil actions under 502(a)(1)(B) as either equitable or legal, the weight of the authority is that the causes of action permitted under Section 502 are equitable in nature. *See Pane v. RCA Corp.*, 868 F.2d 631, 635-37 (3d Cir. 1989); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1006-07 (4th Cir. 1985); *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. 1980); *Reese v. CNH America LLC*, 574 F.3d 315, 327 (6th Cir. 2009); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 829-30 (7th Cir. 1980); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir. 1984); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566-67 (11th Cir. 1987).

Accordingly, we join other sister courts in holding that Plaintiff is not entitled to a jury trial on the ERISA claims.

## CONCLUSION

In view of the foregoing, Defendants' Motion is GRANTED in part and DENIED in part. Specifically:

1. Defendants' Motion to Dismiss as to: 1) the breach of fiduciary duty claim under Section 502(a)(3); 2) the $500,000 in damages; and 3) the jury trial are GRANTED.

---

[12] This does not mean that Plaintiff is not entitled to enforce his rights under the plan and require the plan to pay him the benefits he alleges he is entitled to, which may very well be in monetary form.

2. Defendants' Motion to Dismiss as to the other claims is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 11th day of August, 2016.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
